William A. Markham, California State Bar No. 132970
*wm@markhamlawfirm.com*
Dorn Bishop, California State Bar No. 147994
*db@markhamlawfirm.com* (Of Counsel)
Tara Burd, California State Bar No. 276676
*tb@markhamlawfirm.com* (Of Counsel)
LAW OFFICES OF WILLIAM MARKHAM, P.C.
402 West Broadway, Suite 400
San Diego, CA 92101
Tel: 619.221.4400
Attorneys for Plaintiffs,
AYA HEALTHCARE SERVICES, INC. and AYA HEALTHCARE INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AYA HEALTHCARE SERVICES, INC. and AYA HEALTHCARE, INC., <br><br> Plaintiffs, <br><br> Vs. <br><br> AMN HEALTHCARE, INC. *et al*. <br><br> Defendants. | Case No. 3:17-cv-00205-MMA-MDD <br><br> PLAINTIFFS' *EX PARTE* MOTION FOR DETERMINATION OF DISCOVERY DISPUTE <br><br> RE: PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND OBTAIN RELATED RELIEF <br><br> Dembin Civil Chamber Rule IV.D. <br><br> Complaint Filed:   February 2, 2017 <br><br> Trial Date:   Not set <br><br> The Hon. Mitchell D. Dembin |

JOINT SUBMISSION (RE: PLAINTIFFS' MOTION TO COMPEL PRODUCTION, ETC.)

**PLAINTIFFS' POSITION**

**A.     The Present Motion**. Plaintiffs are Aya Healthcare, Inc. and Aya Healthcare Services, Inc. (collectively, "Aya"). Defendants are five affiliated corporations (collectively, "AMN"). Aya brings this motion to compel AMN to produce documents, provide a privilege log, and provide a status report of its document productions to date. The present motion is timely brought. *See* Declaration of William Markham ("Markham Decl.") ¶¶ 84-98. Before bringing this motion, Aya complied with the requirements of Rule IV.A of this Court's Civil Chamber Rules (the "Rules"). *See id.* ¶ 99. Lastly, Aya has proper cause to bring this motion *ex parte*. *See id.* ¶¶ 6-23.

**B.     The Present Case**. As alleged in Aya's operative complaint (Dkt. 37) Aya and AMN are both healthcare staffing agencies ("providers") that provide traveling nurses ("travelers") to hospitals. *Id.* ¶ 3. AMN, which is publicly traded, is by far the largest provider in the United States and also operates two electronic platforms that other providers use to make sales to hospitals. *Id.* ¶¶ 3, 22. Aya has brought suit against AMN for violations of federal antitrust law and related legal wrongs. *Id.*, *passim*. Aya's principal charging allegations are that AMN uses its superior bargaining power to oblige its employees, other providers and its customers to accept onerous contracts that include various trade restraints (i.e., restrictive covenants that limit or proscribe future commercial activity). *Id.* ¶¶ 116-232. These trade restraints are mutually reinforcing and have strategic impact. *Id.* AMN uses all of them in a manner that unlawfully restrains trade in the United States market for traveler services and in various regional submarkets for these services (the "Regional Submarkets"). *Id.* Among other charging allegations, Aya alleges that AMN has prevailed on nearly all other providers to accept unilateral no-poaching restraints and no-hire restraints that are unlawful *per se* and have been treated by federal antitrust enforcers as criminal violations of federal antitrust law since October, 2016. *Id.* ¶¶ 123-171.

**C.    The AMN Production Agreement**. The present discovery disputes arise from a document-production agreement that was memorialized in a series of e-mail exchanges between the parties from October 9 to October 19, 2018 (the "AMN Production Agreement"). *See* Markham Decl. ¶¶ 26-27, Ex. 2. The AMN Production Agreement recites the categories of documents that AMN agreed to produce in order to comply with Aya's First Set of Requests for Production (the "RPDs"), which Aya served on August 22, 2018. *See id*. ¶ 24, Ex. 1. Among other obligations, the AMN Production Agreement requires AMN to produce the following "core documents":

(1)    <u>Provider Contracts</u>: All contracts between AMN and other providers made or performed in the United States since January 1, 2010, including all such contracts made by its platform operators after it acquired them. Its platform operators are Defendant ShiftWise, Inc. ("ShiftWise"), which AMN acquired in 2013, and Defendant Medefis, Inc. ("Medefis"), which AMN acquired in 2015. *See id*. ¶ 28(a), Ex. 2 (pdf pp. 7-8, 21, 24, 31, 36-37).

(2)    <u>Sales Data</u>: AMN's sales data for its sales of traveler services in the United States, with specified data given from January 1, 2010 onward and other specified data given from September 11, 2013 onward. This data is to be given for sales made directly by AMN, sales made by AMN's subcontractors, and sales made on AMN's two electronic platforms (ShiftWise and Medefis) since it acquired each one. *See id*. ¶ 28(b), Ex. 2 (pdf pp. 2, 4, 7, 11, 39-40, 46).

(3)    <u>Profit-and-Loss Statements</u>. AMN's profit-and-loss statements for its above sales of traveler services since January 1, 2010, with sufficient corroboration to explain and justify its costs (the "Profit-and-Loss Statements"). *See id*. ¶ 28(c), Ex. 2 (pdf pp. 4, 7, 12, 35, 41). AMN has failed to date to produce its Profit-and-Loss Statements in full. *See id*. ¶ 42(4).

**D.    AMN Has Failed to Produce All of the Provider Contracts**.

In response to an earlier version of this motion, which Aya served but never filed, AMN belatedly produced some but not all of the Provider Contracts, and its

various opaque statements on which ones it has produced and which ones it has withheld are confusing and apparently self-contradictory. *See id*. ¶¶ 42-52. At a minimum, AMN has not yet produced the following Provider Contracts: (1) Provider Contracts made on AMN's platforms anywhere in the United States other than the Regional Submarkets (which are comprised of eight sparsely populated states and seven metropolitan regions); (2) Provider Contracts, customer contracts and other documents subject to untimely non-party objections; and (3) Provider Contracts that AMN has excluded from its own reformulated definition of the Provider Contracts that it is willing to produce. *See id*. ¶¶ 42-43.

AMN has no proper basis to withhold any of these Provider Contracts. The AMN Production Agreement obliges AMN to produce these contracts. *See id*. ¶ 28(a), Ex. 2 (pdf pp. 7-8, 21, 24, 31, 36-37). AMN has merely given unilateral announcements of broad exceptions to its express obligation. Aya's position is not only supported by the clear language of the parties' agreement, but is justified. If Aya's challenge is correct, the Provider Contracts, or many of them, will constitute direct evidence of AMN's use of no-poaching and no-hire restraints that are unlawful *per se* under Section 1 of the Sherman Act (15 U.S.C. § 1) ("Section 1"). *See* Dkt. 37 ¶¶ 139-171. By obtaining all of the Provider Contracts, and not merely the ones that AMN prefers to produce, Aya can vindicate its own allegations as well as our national competition policy on these kinds of trade restraints. Regardless, Aya has proposed a compromise resolution of this production obligation. *See* Markham Decl. ¶ 83.

### E. AMN Intends to Produce Fatally Incomplete Sales Data

To date, AMN has produced only part of the Sales Data and only for a small part of the country – the Regional Submarkets. *See id*. ¶¶ 42-43. It recently announced its intention to produce part of its national Sales Data in an anonymous format (*id*. at Exs. 9-10), but its national Sales Data will improperly exclude (1) data for sales made on its two platforms; and (2) three necessary data fields. By producing this incomplete data, AMN has not only breached the AMN Production Agreement, but withheld

evidence that Aya requires to prove its claims.

*First*, Aya requires the national Sales Data for AMN's two platforms (ShiftWise and Medefis) to prove one of its antitrust challenges – its rule-of-reason claim against AMN for restraining trade unlawfully in the national market for traveler services. *See* Dkt. 37 ¶¶ 308-328 (Aya's second cause of action). Without this data, Aya will have no opportunity to prove this claim under its usual standard.[1] *Second*, the Sales Data that AMN has produced and intends to produce lacks three necessary data fields, each of which Aya's experts require to prepare their antitrust report. *See* Markham Decl. ¶¶ 71-80. To resolve these matters and accommodate AMN's concerns about anonymity, Aya has made a discovery proposal, which appears in the Markham Decl. ¶ 82.

### F.  AMN's Withholding of Counterparty Information Contravenes This Court's Protective Order

Aya served its RPDs on August 22, 2018. AMN determined that some of these requests elicited documents that disclosed confidential commercial information of its counterparties. *See id*. ¶ 53. It withheld numerous documents and voluminous data on this ground. *See id*. ¶¶ 53-65. It chose to give notice only to affected counterparties in the Regional Submarkets (*id*. ¶ 65), and it gave this notice *seventy days* after being served with the RPDs (*id*. ¶ 53). None of those counterparties filed a motion in this Court within fourteen days of receiving AMN's untimely notice, but must have done

---

[1] To prevail on this claim, which arises under Section 1, Aya must show *inter alia* that AMN has sufficient market power so that its trade restraints are capable of harming competitive conditions in the national market. *See* Dkt. 34 (order on AMN's second motion to dismiss) at 37-39. To demonstrate AMN's market power in a Section 1 claim, it suffices to show that AMN has a large market share that is protected by market barriers. *See id*. To prove AMN's large market share, Aya has aggregated AMN's direct sales with all sales made on AMN's two platforms (Medefis and Shiftwise). Their sum is "AMN's adjusted market share." *See* Dkt. 37 ¶¶ 71-83. Aya alleges that this calculation is proper because AMN controls sales made by other providers on its platforms and for all intents and purposes treats them as its *de facto* subcontractors, so that these sales should be included in its market share. *See id*. But if Aya cannot obtain the national sales data for AMN's two platforms, it cannot offer proof of AMN's adjusted market share in the national market. On this ground alone, its above claim would likely fail on summary judgment. At best, Aya would be obliged to prove AMN's market power by econometric evidence of supracompetitive pricing and must forgo the simpler proofs of market share and market barriers. *See* Dkt. 34 at 37-39.

so to obtain relief from AMN's obligation to produce the documents in question. §11(c).[2] As of this writing, AMN still has not given notice to affected counterparties anywhere else in the country, and therefore has failed to notify them "promptly." AMN therefore lacks any proper basis to withhold any of these documents.

### G. AMN Has Wrongly Refused to Provide a Privilege Log.

Notwithstanding the parties' Protocol on Discovery Matters and ESI (the "Discovery Protocol"), which imposes an obligation of a privilege log (Markham Decl. ¶ 63, n.3, Ex. 8 § 9), AMN has refused to provide a privilege log for any of the documents that it has withheld because of its counterparties' privacy rights. *See id.* ¶62, Ex. 7. This omission matters to Aya. Without this log, Aya's experts will know only that there is a gap in their data, but they will not know how large a gap. The log will disclose the *number* of Provider Contracts and the *volume* of Sales Data that AMN has withheld. AMN has no proper basis to refuse to provide one. *See id.* ¶ 64.

### H. Requested Relief.

Aya respectfully asks that the Court order AMN to complete its production of the Provider Contracts, the Sales Data, and the Profit-and-Loss Statements, as those terms are defined in the Markham Decl. ¶¶ 28-29. In lieu of either or both production obligations, AMN should be ordered to accept either or both of Aya's discovery proposals, which appear at the Markham Decl. ¶¶ 82-83. AMN should be further ordered to provide a privilege log of documents withheld because of counterparty objections, *per* the Discovery Protocol. Lastly, AMN should be ordered to provide a status report that discloses with reasonable clarity which Provider Contracts it has produced and which ones it has not produced.

//
//
//

---

[2] A party that is asked to produce documents that disclose a non-party's confidential information must "promptly" notify the non-party. *See* Dkt. 47 (this Court's Protective Order) *id.* § 11(b)(1). The party must thereafter produce the requested documents, unless within *fourteen days* the non-party brings a motion for a protective order *in this Court. See id.* § 11(c). The non-party carries the burden of proof. *See id.*

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: December 26, 2018 | LAW OFFICES OF WILLIAM MARKHAM, P.C. |
|   | /s/ William Markham |
| By: | _____ |
|   | WILLIAM A. MARKHAM<br>DORN BISHOP<br>TARA BURD<br>Attorneys for Plaintiffs<br>AYA HEALTHCARE SERVICES, INC. and AYA HEALTHCARE, INC. |